IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

|  |  |  |
|---|---|---|
| Phyllis Swofford, | ) | Civil Action No. 8:10-00938-JDA |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **ORDER** |
| vs. | ) |  |
|  | ) |  |
| Michael J. Astrue, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable Henry F. Floyd's April 30, 2010 Order of reference.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  For the reasons set forth below, the decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

On July 24, 2008, Plaintiff protectively filed applications for DIB and SSI, alleging an onset of disability date of October 25, 2007.  [R. 16, 102–16.]  Plaintiff's applications were denied initially and on reconsideration.  [R. 64–83, 86–91.]  On January 30, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 92], and on

August 13, 2009, ALJ Thomas F. Batson conducted a de novo hearing on Plaintiff's claims. [R. 29–59.]

The ALJ issued a decision on August 28, 2009, finding Plaintiff not disabled.  [R. 13–28.]  The ALJ found Plaintiff had a severe impairment, peripheral arterial disease, but her other alleged impairments, including bursitis, back pain, a breast cyst, obesity, drug and alcohol abuse, depression, and anxiety, were not severe impairments.  [R. 18–21, Finding 3.]  The ALJ concluded Plaintiff's impairments did not meet or equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 21, Finding 4.].  The ALJ also found Plaintiff capable of the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).  [R. 21, Finding 5.]  Specifically, the ALJ found Plaintiff could lift or carry up to twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours each in an eight-hour workday; occasionally balance, kneel, crouch, crawl, stoop, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; and needed to avoid concentrated exposure to hazards, such as machinery and heights.  [*Id.*]  The ALJ found Plaintiff was capable of performing her past relevant work as a restaurant manager because her past relevant work did not require her to perform work-related activities precluded by her residual functional capacity.  [R. 27, Finding 6.]  Thus, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  [R. 28, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined [R. 1–6], making the ALJ's decision the Commissioner's final decision for purposes of judicial review, 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff filed this action for judicial review on April 15, 2010.  [Doc. 1.]

2

## THE PARTIES' POSITIONS

Plaintiff contends (1) the ALJ erred in determining Plaintiff's severe impairments; (2) the ALJ erred in determining Plaintiff could perform her past relevant work; and (3) the Appeals Council erred by failing to properly consider new evidence. [Doc. 14 at 1.]

The Commissioner contends (1) the ALJ properly found Plaintiff's mental impairments to be non-severe impairments [Doc. 15 at 8]; (2) the ALJ properly considered Plaintiff's past work and determined her residual functional capacity did not preclude such work [*id.* at 11–12]; and (3) the additional evidence does not warrant remand because the Appeals Council adequately reviewed the additional evidence [*id.* at 12] and the additional evidence would not have been reasonably expected to change the outcome [*id.* at 14].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

3

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

4

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

5

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[1] With remand under sentence

---

[1]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

6

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.      The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

7

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  See 20 C.F.R. §§ 404.1521, 416.921.  When determining whether

8

a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.      *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

9

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[2] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[3] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[2]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(e)

[3]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

12

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.   20 C.F.R. §§ 404.1527(e), 416.927(e).   However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

13

to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even

14

when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518.   The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928.   Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Severity of Plaintiff's Impairments**

Plaintiff contends the ALJ erred in determining Plaintiff's severe impairments. [Doc. 14 at 14–20.] Specifically, Plaintiff argues the ALJ made three errors at Step 2 of the five-step evaluation: the ALJ (1) failed to consider Plaintiff's impairments in combination [Doc. 14 at 15]; (2) erroneously assigned little weight to Dr. Barwick's opinion [*see id.* at 18; Doc. 16 at 2–4]; and (3) failed to document his evaluation of Plaintiff's mental impairments using the special technique for assessing the severity of a claimant's mental impairments [Doc. 14 at 20].

### *Combination of Impairments*

Plaintiff argues the ALJ failed to properly consider Plaintiff's impairments in combination to determine Plaintiff's severe impairments. [Doc. 14 at 14–15.] The Court disagrees.

As stated in the Act:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.

42 U.S.C. § 423(d)(2)(B). If an ALJ finds a claimant has a severe impairment or combination of impairments, the ALJ must consider all of the claimant's impairments, including non-severe impairments and the limitations imposed by all the claimant's impairments, at the remaining steps of the sequential analysis. *Id.*; *Pittman v. Astrue*, No.

17

5:08-cv-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ must evaluate the combined effect of the claimant's impairments], the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).

Here, the ALJ found Plaintiff's peripheral arterial disease was a severe impairment, but Plaintiff's medically determinable impairments of bursitis, back pain, breast cyst, obesity, drug and alcohol abuse,[4] depression, and anxiety, considered singly and in combination, did not cause more than minimal limitations in Plaintiff's ability to perform basic physical and mental work activities. [R. 19.] First, the ALJ listed all of the alleged impairments, and discussed why he found many of Plaintiff's alleged symptoms not credible. [R. 19–21.] With respect to bursitis, the ALJ noted Plaintiff's testimony that she has pain in her hands and arms attributable to bursitis that is exacerbated by reaching overhead. [R. 19.] The ALJ observed none of the medications Plaintiff listed on forms submitted to the Administration were specifically related to symptoms caused by bursitis [*id.* (citing R. 183–84)], but Plaintiff testified she took medication designed to control bursitis [*id.*]. Further, although Plaintiff presented to the emergency room with arm pain in March 2009, and the physician diagnosed acute bursitis, Plaintiff's shoulder exam was

---

[4]The ALJ found Plaintiff ceased using drugs and alcohol and, therefore, Plaintiff's drug and alcohol abuse were not material to his decision. [R. 20.] While Plaintiff alleged disability due to alcohol and drug abuse, the ALJ noted Plaintiff testified that she stopped abusing alcohol and drugs in September 2008, which was corroborated by medical records indicating Plaintiff had a negative drug test a few weeks before the hearing, and her alcohol abuse was in "early full remission" for seven months in March 2009. [*Id.*]

within normal limits, and Plaintiff was discharged with a prescription for a conservative medication.  [*Id.* (citing R. 405–06).]

With respect to Plaintiff's allegations of back pain, the ALJ found Plaintiff's medical records contained little documentation regarding back pain.  [*Id.*]  Further, the ALJ noted a radiologist found, in an April 2008 x-ray for a rib injury, that Plaintiff had degenerative changes throughout the thoracic spine, but there was no information regarding the extent of these abnormalities.  [*Id.*]

Regarding Plaintiff's breast cyst, the ALJ noted the record did not contain a pathology report or an indication that a biopsy had been performed, and no immediate treatment was needed.[5]  [R. 19–20.]  With respect to obesity, the ALJ noted the record revealed Plaintiff was obese, but she failed to allege any symptoms or functional limitations due to her obesity, and the record did not support any functional limitations resulting from her obesity.  [R. 20.]  However, the ALJ stated he took Plaintiff's obesity, as well as her other non-severe impairments, into consideration when formulating her residual functional capacity.  [*Id.*]

With respect to Plaintiff's depression and anxiety, the ALJ noted Plaintiff took medication to treat her mental conditions and that she had been treated both on an inpatient and outpatient basis, but the ALJ concluded that a review of the entire record showed no more than mild limitations in Plaintiff's daily activities, social functioning, and concentration, persistence, or pace.  [*Id.*]  Further, the ALJ found Plaintiff did not experience any episodes of decompensation of extended duration.  [*Id.*]  Additionally, the

---

[5]Treatment notes indicate the cyst is probably benign.  [R. 480.]

19

ALJ noted Plaintiff's mental impairments did not prevent her from returning to her previous work as a restaurant manager.  [*Id.*]

Moreover, in his residual functional capacity assessment, the ALJ discussed Plaintiff's testimony and medical evidence in more detail.  [R. 21–27.]  The ALJ explicitly stated he had considered all of Plaintiff's impairments in formulating her residual functional capacity [R. 25], and his concluding paragraph to his residual functional capacity discussion indicates he considered Plaintiff's impairments in combination in assessing the severity of her impairments and her residual functional capacity [R. 27].

Based on a review of the record and the ALJ's decision, the Court finds the ALJ adequately considered Plaintiff's impairments singly and in combination in determining the severity of Plaintiff's impairments, and the ALJ sufficiently explained his reasoning as to the combined effect of Plaintiff's impairments.

### *Weight Assigned to Dr. Barwick's Opinion*

Plaintiff argues "[t]he ALJ appears to have not given much weight to the evaluation of Dr. Barwick," which led the ALJ to erroneously conclude that Plaintiff's mental impairments were not severe impairments.  [*See* Doc. 14 at 18–19; Doc. 16 at 2–4.]  The Court disagrees that the ALJ's treatment of Dr. Barwick's opinion was in error.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating

20

physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. 20 C.F.R. § 1527(e).[6]

### Dr. Barwick's Opinion

During Plaintiff's initial consultation in March 2009, Dr. Barwick noted Plaintiff "seems to endorse criteria for major depression." [R. 422.] Dr. Barwick also reported she did not detect a true history of mania and much of Plaintiff's previous mental history was complicated by alcohol abuse. [*Id.*] Dr. Barwick assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 45.[7] [*Id.*]

---

[6] "[B]ecause the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant," the general rule is that a claimant's treating physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178). An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of a claimant's treating physicians' opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

[7] GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 45 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school

In her discussion with Dr. Barwick, Plaintiff indicated her sister, with whom she was very close, died in the last year; another sister was dying of cancer; a brother had heart disease; another brother had diabetes and cancer; and another sister had undergone triple bypass surgery.  [R. 420.]  Plaintiff also stated she had been put out of her home when she was fired from her job, was living with her son, and was not relating well to her son's girlfriend.  [R. 420–21.]  Plaintiff indicated she sought treatment because she was "losing [her] mind" and her family was "dropping like flies."  [R. 425.]  Plaintiff indicated she enjoyed karaoke parties with her family and watching sports.  [R. 424.]  Dr. Barwick indicated she discussed treatment options with Plaintiff, but Plaintiff's treatment options were financially limited.  [R. 422.]

*Weight Assigned to Dr. Barwick's Opinion by the ALJ*

First, the ALJ found Dr. Jumaquio, Plaintiff's physician at ReGenesis Community Health ("ReGenesis"), best fit the description of Plaintiff's treating physician of all of the physicians of record.  The ALJ noted that ReGenesis records from May 15, 2008 indicated Plaintiff was oriented to person, place, and time, with mood and affect appropriate to the situation and no suicidal ideation.  [R. 24; *see* R. 271.]  The ALJ noted Dr. Jumaquio's treatment notes from July, August, and October 2008 all indicated Plaintiff was negative for anxiety and depression, and her mood and affect was appropriate to the situation.  [R. 24; *see* 273, 275–76, 312].  Similarly, in August 2008, emergency room staff at Mary Black Hospital recorded Plaintiff's mental status as intact, awake, alert, and oriented times three. [R. 24; *see* 262.]  The ALJ noted at no time during Plaintiff's visits to ReGenesis or Mary

---

functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34 (emphasis omitted).

Black Hospital did she complain of any mental conditions, including depression or anxiety. [R. 24.] Also important to the ALJ's decision was the fact that Plaintiff did not seek mental health treatment during the relevant period[8] until March 16, 2009, when she saw Dr. Barwick. [*Id.*; *see* R. 420–22.]

The ALJ further noted two state agency psychiatric review technique forms ("PRTF"), completed in October 2008 and January 2009, both indicated Plaintiff's mental conditions were "nonsevere."[9] [R. 25; *see* R. 284–97, 377–90.] The ALJ also observed Plaintiff continued to see Dr. Jumaquio at ReGenesis regularly after the January 2009 PRTF, and at no time did Dr. Jumaquio indicate that Plaintiff's mental status was not within normal limits. [R. 24; *see* R. 410–15.] Further, the ALJ noted that about two weeks before Plaintiff visited Dr. Barwick, Dr. Jumaquio's treatment notes stated:

> [Plaintiff] demonstrates normal behavior appropriate for age and situation. [Plaintiff] has adequate support systems available . . . and can perform all activities of daily living without assistance. . . . [Plaintiff] demonstrates the ability and willingness to learn. . . . Appears to be normally interacting with care giver(s) or others that are present. [Plaintiff is] alert, oriented to person, place and time. . . .

[R. 24; *see* R. 408.]

---

[8] Plaintiff's alleged onset of disability date is October 25, 2007. [R. 102.]

[9] The state agency physicians found Plaintiff had only mild restrictions in daily living; mild difficulty in social functioning; mild difficulty in concentration, persistence, or pace; and no episodes of decompensation. [R. 294, 387.] As explained below, if the a claimant's degree of limitation in the first three areas—activities of daily living; social functioning; and concentration, persistence, or pace—is none or mild, and the claimant has experienced no episodes of decompensation, the claimant's mental impairment is usually found to be non-severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

*Analysis*

Upon review, it is clear the ALJ considered Dr. Barwick's opinion in light of all the medical evidence.  In his decision, the ALJ referenced the wide range of evidence concerning Plaintiff's depression and anxiety, explaining how Plaintiff's mental impairments impacted her activities of daily living; social functioning; concentration, persistence, or pace; and ability to return to her past relevant work.  [R. 20, 22, 23–25.]  The ALJ also considered whether Plaintiff had experienced any episodes of decompensation of extended duration.  [R. 20.]  Based on a review of the record and the ALJ's decision, the Court finds the ALJ complied with the directives of 20 C.F.R. §§ 404.1527 and 416.927 for evaluating medical evidence, as well as the guidance provided in *Johnson*, 434 F.3d 650, and *Mastro*, 270 F.3d 171.  Accordingly, the Court finds the ALJ adequately evaluated and explained his weighing of the evidence as to whether Plaintiff's depression and anxiety were severe impairments; therefore, the Court finds no error in the ALJ's decision at Step 2 based on the weight assigned to Dr. Barwick's opinion.

### Special Technique for Mental Impairments

Plaintiff contends the ALJ failed to assess Plaintiff's mental impairments according to the special technique contained in the Administration's regulations.[10]  [Doc. 14 at 19–20.]  The Court disagrees.

---

[10] In outlining the special technique, Plaintiff emphasized one requirement, stating "*the ALJ must document his application of the technique as required under the law.*"  [Doc. 14 at 19–20 (citing 20 C.F.R. § 404.1520a(e)).]  Plaintiff's argument suggests that she believes the ALJ did not properly document his assessment of Plaintiff's mental impairments using the special technique for mental impairments.

24

*The Special Technique*

At Step 2 of the five-step evaluation process, the ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if the claimant has a medically determinable mental impairment.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment.  *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2).  The rating determines whether the claimant's impairment is severe or not severe.  *Id.* §§ 404.1520a(d), 416.920a(d).

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C.  To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* §§ 404.1520a(c)(2), 416.920a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H.  The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme.  *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).    For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more.  *Id.*  If the ALJ rates the claimant's degree of limitation as none or mild in the first

25

three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe,[11] "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

*ALJ's Analysis of Plaintiff's Mental Impairments*

In analyzing Plaintiff's mental impairments at Step 2 of the sequential analysis, the ALJ noted Plaintiff's testimony that she suffers from the effects of depression and anxiety. [R. 20.] The ALJ also noted Plaintiff takes medication used to treat mental conditions and that Plaintiff had been treated for depression and anxiety, including three suicide attempts, on an inpatient and outpatient basis. [*Id.*] The ALJ concluded, based on the entire record and testimony, that Plaintiff's mental impairments were non-severe because her mental impairments caused no more than mild limitations in the broad functional areas of activities of daily living; social functioning; and concentration, persistence, or pace; and Plaintiff had experienced no episodes of decompensation of extended duration.[12] [*Id.*] Further, in his residual functional capacity assessment, the ALJ discussed in more detail Plaintiff's mental impairments, the record evidence, and his findings with respect to those impairments. [R. 24–25.] Accordingly, the Court finds Plaintiff's argument on this point is without merit because the ALJ performed the special technique for assessing the severity of a claimant's mental impairments and adequately documented his application of the technique.

---

[11] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

[12] In discussing the fourth functional area, episodes of decompensation, the ALJ noted he had considered Plaintiff's suicide attempts and intermittent inpatient and outpatient care. [R. 20.]

**Past Relevant Work**

Plaintiff argues that, in determining Plaintiff could perform her past relevant work, the ALJ failed to adequately consider the mental and physical demands of Plaintiff's past relevant work as a restaurant manager and compare the demands to her residual functional capacity. [Doc. 14 at 20; *see also* Doc. 16 at 6–7.] Plaintiff claims the ALJ made no inquiries about the mental or physical demands of Plaintiff's past work as a restaurant manager before finding that she retained the ability to perform that work. [Doc. 14 at 20; Doc. 16 at 6.] The Court disagrees.

In making the required finding of fact as to the physical and mental demands of past work, the ALJ may obtain information from several sources: the claimant, the employer, co-workers, vocational experts or specialists, or other resources. *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1565(b), 416.960(b)(2), 416.965(b). A determination of the claimant's ability to do past relevant work might require, "in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." SSR 82-62, 1982 WL 31386, at *3 (1982).

Contrary to Plaintiff's contention, the ALJ's decision makes a specific finding of fact as to the physical and mental demands of Plaintiff's past relevant work. The ALJ specifically found

> [t]he vocational analysis in exhibit 9E indicates that [Plaintiff's] past relevant work as restaurant manager is light, skilled work, and that [Plaintiff] could return to this previous relevant work. I note that this determination was made only a few months before [Plaintiff's] hearing and it was based on [Plaintiff's] own description of her work history in Form 3368, the Dictionary of

27

> Occupational Titles, selected characteristics of Occupations in the Revised DOT, 1993, and [Plaintiff's] own words conveyed in a telephone conversation.

[R. 27 (internal citation omitted).]  The ALJ noted the vocational analysis contained in the record indicated Plaintiff could perform her past relevant work even if she was limited in a way that was substantially similar to the ALJ's residual functional capacity assessment. [R. 27–28.]  Additionally, the ALJ stated,

> In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of [Plaintiff's past relevant] work, I find that [Plaintiff] is able to perform it as generally performed in the national economy.  The limitations relied upon by the vocational analyst are consistent with the limitations I assessed in [Plaintiff's] RFC above. . . . I further note that I have relied on the guidance of SSR 83-14 and the Dictionary of Occupational Titles, in addition to the record as a whole, to make my conclusion that [Plaintiff] can perform her past relevant work.

[R. 28.]

Based on the above and a review of the record, the Court finds the ALJ did consider the physical and mental demands of Plaintiff's past relevant work as a restaurant manager.  The ALJ also considered whether Plaintiff could fulfill the physical and mental demands of her past relevant work based on her residual functional capacity.  Therefore, the Court finds Plaintiff's argument is without merit.

**Consideration of New Evidence**

Plaintiff submitted additional evidence to the Appeals Council, including records of Plaintiff's hospitalization in August 2009 and a statement from her physician that heart disease produced marked limitation of Plaintiff's physical activity at least as of August 16,

28

2009.[13]  [R. 185–92, 439–90.]  Plaintiff contends the evidence is new, material, and relates

to the period on or before the date of the ALJ's decision and shows by hard objective data

that Plaintiff cannot perform even ordinary activity.  [Doc. 14 at 21–24; *see also* Doc. 16

at 10–11.]  Plaintiff also contends the Appeals Council did not fulfill its duty to review the

additional evidence because its review contains a glaring factual error—the Appeals

Council listed the dates the evidence was submitted but the treatment dates and opinion

---

[13] The Order of Appeals Council listed the following as additional evidence:

- Representative's Brief from Paul Townsend McChesney dated October 30, 2009

- School Records from Spartanburg County School District 3, dated August 25, 1960 through January 5, 2971

- Medical Records from Mary Black Hospital dated August 15, 2008 to August 22, 2009

- Questionnaire filled out by Dr. Larry Kibler, dated December 3, 2009

- Mammogram from John Harrill M.D., dated April 14, 2009

- Treatment Records from Regenesis Community Health Center dated July 2, 2009

- Medical Records from Spartanburg Mental Health, dated April 22, 2009 through September 22, 2009

[R. 6.]  In her briefs, Plaintiff appears to contest the Appeals Council's treatment of only the records from her August 17–22, 2009 hospitalization and the questionnaire completed by Dr. Larry Kibler on December 3, 2009.  [*See* Doc. 14 at 21–23; Doc. 16 at 7–8.]  As explained below, the Court finds these records are not material to the ALJ's decision.  The Court notes there may also be as issue as to whether the evidence relates to Plaintiff's condition on or before the date of the ALJ's decision because although the August 17–22, 2009 hospitalization occurred before the ALJ's August 28, 2009 decision, the hospitalization revealed an additional impairment that had not been presented to the ALJ.  *See infra* pp. 34–35.  However, as the parties have not fully briefed this issue, the Court declines to consider whether the evidence at issue relates to the period on or before the ALJ's decision.

information relates to the time period prior to August 28, 2009.[14] [Doc. 14 at 24–26; *see also* Doc. 16 at 11–13.]

The Commissioner argues the Appeals Council is not required to provide specific findings regarding new evidence submitted to it. [Doc. 15 at 12.] In support of his argument, the Commissioner notes that in *Wilkins v. Secretary of the Department of Health & Human Services*, 953 F.2d 93 (4th Cir. 1991), the Fourth Circuit outlined when the Appeals Council must consider evidence submitted to it but did not state that the Appeals Council must explain why the evidence did not warrant changing the ALJ's decision. [*Id.* at 12–13.] The Commissioner further argues that two separate Fourth Circuit panels have held the Appeals Council need not give detailed reasons for finding new evidence does not provide a basis for changing the ALJ's decision, citing *Hollar v. Commissioner of the Social Security Administration*, 194 F.3d 1304, 1999 WL 753999, at *1 (4th Cir. Sept. 23, 1999) (unpublished table decision), and *Freeman v. Halter*, 15 F. App'x 87, 89 (4th Cir. 2001) (unpublished opinion). [*Id.* at 13.] As a result, the Commissioner submits that the Appeals

---

[14] In its letter to Plaintiff denying her request for review, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at Mary Black Hospital treatment records dated October 2, 2009, Cardiology Consultants treatment records dated September 15, 2009, and Regenesis Community Health Center treatment records dated November 4, 2009. The Administrative Law Judge decided your case through August 28, 2009. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 28, 2009.

[R. 1–2.]

Council adequately reviewed Plaintiff's additional evidence.  [*Id.* at 13–14.]  Additionally, the Commissioner contends Plaintiff's additional evidence would not have been reasonably expected to change the outcome because the evidence was not material.  [*Id.* at 14–16.]

### Whether the Appeals Council Must Articulate Its Reasoning

The Court will first address when the Appeals Council must articulate its reasoning for accepting and considering additional evidence but denying review of the ALJ's decision.

The Appeals Council must consider evidence submitted with a claimant's request to review the ALJ's decision if the evidence "'is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision'"; evidence considered by the Appeals Council is incorporated into the record.  *Wilkins*, 953 F.2d at 95–96 (quoting *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)); 20 C.F.R. § 416.1470(b).  When determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court must consider all evidence of record, which includes any evidence submitted to the Appeals Council that is incorporated into the record.  *Wilkins*, 953 F.2d at 96.  Further, "it is not within the province of a reviewing court to determine the weight of the evidence," *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); the Commissioner must explicitly indicate the weight of all relevant evidence, *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979).  Therefore, when determining whether the Commissioner's decision is supported by substantial evidence, the Court must be mindful that its scope of review does not encompass weighing the additional evidence.  *See Harmon v. Apfel*, 103 F. Supp. 2d 869, 871–72 (D.S.C. 2000).

31

These two requirements—(1) that the Appeals Council consider certain evidence that was not before the ALJ, thereby incorporating that evidence into the record, and (2) that the reviewing court consider all evidence of record without weighing the evidence—have produced an apparent conflict in the Fourth Circuit as to whether the Appeals Council must articulate why it is rejecting the additional evidence or why the additional evidence it considered does not provide a basis for changing the ALJ's decision. *Jackson v. Astrue*, No. 08-579, 2009 WL 1181178, at *5 (D.S.C. May 1, 2009) (discussing split of authority within the Fourth Circuit). However, a review of the cases in the District of South Carolina reveals that a majority of the judges in this District require the Appeals Council to give some explanation.[15]

In one case from this District, the court found no error in the Appeals Council's failure to explain the impact of evidence the claimant submitted to the Appeals Council. *Meyer v. Astrue*, No. 08-3828, 2010 WL 1257626, at *5 (D.S.C. Mar. 25, 2010). The court found the additional evidence was not new and, therefore, "the Appeals Council [was] not required to articulate its reason for failing to consider such evidence." *Id.* Consequently, the court's holding in *Meyer* is distinguishable because the court found the Appeals Council

---

[15] *See Roberts v. Astrue*, No. 0:10-cv-867, 2011 WL 1356776, at *1–2 (D.S.C. Apr. 11, 2011) (Gergel, J.); *Lewis v. Astrue*, No. 9:09-cv-3134, 2011 WL 901000, at *4 (D.S.C. Mar. 15, 2011) (Childs, J.); *Belue v. Astrue*, No. 1:09-cv-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010) (Seymour, J.); *Cagle v. Astrue*, No. 2:09-cv-115, 2010 WL 3734234, at *3 (D.S.C. Sept. 20, 2010) (Anderson, J.); *Chapman v. Astrue*, No. 07-cv-2868, 2010 WL 419923 (D.S.C. Jan. 29, 2010) (Wooten, J.) (adopting Report and Recommendation of magistrate judge); *Suber v. Comm'r*, 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (Floyd, J.); *Priestley v. Astrue*, No. 6:08-546, 2009 WL 1457152, at *14–15 (D.S.C. May 22, 2009) (Anderson, J.) (adopting Report and Recommendation of magistrate judge); *Jackson*, 2009 WL 1181178 (Currie, J.) (adopting Report and Recommendation of magistrate judge); *Raymond v. Astrue*, No. 2:08-cv-974, 2009 WL 632317, at *6 (D.S.C. Mar. 11, 2009) (Blatt, J.) (adopting Report and Recommendation of magistrate judge); *Wheelock v. Astrue*, No. 9:07-cv-3786, 2009 WL 250031, at *9 (D.S.C. Feb. 3, 2009) (Herlong, J.); *Harmon v. Apfel*, 103 F. Supp. 2d 869, 873 (D.S.C. 2000) (Norton, J.).

was not required to consider the additional evidence because it was not new.[16]  Therefore, in this District, if the additional evidence is new, material, and relates to the period on or before the date of the ALJ's decision, the Appeals Council must articulate why it is rejecting the additional evidence or why the additional evidence it considered does not provide a basis for changing the ALJ's decision.[17]

---

[16] In stating its holding, the court in *Meyer* recognized the Fourth Circuit split: "Where evidence is not new, and perhaps even when it is, the Appeals Council is not required to articulate its reason for failing to consider such evidence." *Meyer*, 2010 WL 1257626, at *5 (citing *Hollar*, 194 F.3d 1304; *Harmon*, 103 F. Supp. 2d at 873).

[17] The Court is not convinced by the Commissioner's arguments to the contrary.  First, the Fourth Circuit's decision in *Wilkins* provides no basis for the Appeals Council to deny review upon consideration of additional evidence without explaining the impact of the additional evidence.  As the Commissioner points out, the Fourth Circuit in *Wilkins* did not state that the Appeals Council must explain why the evidence did not warrant changing the ALJ's decision, but the Commissioner places too much emphasis on his observation.  The *Wilkins* court did not address whether the Appeals Council is or is not required to explain its reasoning with respect to additional evidence.  *Wilkins*, 953 F.2d at 95–96 (stating when the Appeals Council must consider additional evidence and finding the Appeals Council properly considered the additional evidence at issue).
    Additionally, the Commissioner's reliance on *Hollar* and *Freeman* is inapposite in light of the fact that courts in this District have consistently held that, if the Appeals Council considers additional evidence in denying review of a claim, it is incumbent on the Appeals Council to give some reason and explanation for finding that the additional evidence does not justify further administrative action.  *See, e.g.*, *Belue v. Astrue*, No. 09-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010); *supra* note 7.  Further,

> although the Appeals Council's decision whether to grant or deny review of
> an ALJ's decision may be discretionary as well as unreviewable, and the
> regulations do not require the Appeals Council to articulate a reason for its
> decision not to grant review, a reviewing court cannot discharge its statutory
> function of determining whether the findings of the Commissioner are
> supported by substantial evidence when the Appeals Council considered
> evidence that the ALJ did not have the opportunity to weigh, and rejected
> that new, additional evidence without specifying a reason for rejecting it or
> explicitly indicating the weight given to the evidence.

*Harmon*, 103 F. Supp. 2d at 874.  Therefore, this Court adheres to the oft-articulated view of this District that the Appeals Council must explain the impact of any additional evidence it considered.

33

***Whether the Appeals Council Should Have Articulated Its Reasoning in This Case***

Having determined that the Appeals Council must articulate its reasoning if the additional evidence is new, material, and relates to the period on or before the date of the ALJ's decision, the Court turns to whether the Appeals Council should have articulated its reasoning in this case. As summarized above,

> The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Evidence is new within the meaning of this section if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Wilkins*, 953 F.2d at 95–96 (citations and footnote omitted). Although the new evidence must relate to the period on or before the date of the ALJ's decision, "[t]his does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time." *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003) (citations omitted). Additionally, new evidence is "material" when it contradicts the ALJ's findings and conclusions regarding the severity of the claimant's medical problems. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001).

Here, as the Commissioner contends, the additional evidence is not material. First, Plaintiff failed to explain how the evidence contradicts the ALJ's decision that Plaintiff can perform light work. *See id.*; *Wilkins*, 953 F.2d at 96 ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.") Plaintiff

34

contends Dr. Kibler's opinion demonstrates Plaintiff is comfortable only at rest, and therefore, Plaintiff cannot perform her past relevant work.  [Doc. 14 at 23.]  However, Plaintiff failed to explain how Dr. Kibler's opinion that Plaintiff is comfortable only at rest demonstrates Plaintiff is limited to less than light work, and Plaintiff failed to explain how avoiding "less than ordinary activity" precludes Plaintiff from performing light work.  [*See* Doc. 14 at 23 (emphasizing New York Heart Association Classifications of Heart Disease notation that for patients with Class III heart disease, less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain; *see also* R. 478 (New York Heart Association Classifications of Heart Disease).]

Second, upon review of the record, the Court finds no indication that the additional evidence at issue[18] contradicts the ALJ's decision.  The additional evidence indicates Plaintiff suffers from coronary artery disease [*see, e.g.*, R. 462 (impression following cardiac catheter), R. 477 (diagnosis underlying Dr. Kibler's opinion that Plaintiff suffers from Class III heart disease)], which is an impairment that had not been considered by the ALJ.  The evidence indicates only how Class III heart disease generally affects patients [*see* R. 478]; there is no evidence of any limitation on Plaintiff's abilities based on coronary artery disease.  Further, Dr. Kibler opined Plaintiff's coronary artery disease resulted in marked limitation of physical activity, but his opinion provides little guidance as to whether Plaintiff would be limited to less than light work.  [R. 477–78; see R. 21, Finding 5 (concluding Plaintiff has the residual functional capacity to perform the full range of light work).]  Therefore, the Court finds the evidence is not material to the ALJ's decision, and

---

[18] *See supra* note 12.  Based on Plaintiff's briefs, the Court has considered only the records from Plaintiff's August 17–22, 2009 hospitalization and the questionnaire completed by Dr. Larry Kibler in December 2009.

the Appeals Council did not err in failing to discuss the reasons why the evidence did not provide a basis for changing the ALJ's decision.

## **<u>CONCLUSION</u>**

Wherefore, based upon the foregoing, it is ordered that the Commissioner's decision be AFFIRMED.

IT IS SO ORDERED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

September 12, 2011
Greenville, South Carolina